UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAVID SICKLE,<br>184 Tar-Kiln Dr.<br>Hubert, NC 28539<br><br>and<br><br>MATTHEW ELLIOTT,<br>1517 South 12th Street<br>Sheboygan, WI 53081<br><br>Plaintiffs,<br><br>v.<br><br>TORRES ADVANCED ENTERPRISE<br>SOLUTIONS, LLC (AKA TORRES<br>AES, LLC), a Limited Liability Company<br><br>and<br><br>SCOTT TORRES,<br>SERVE BOTH DEFENDANTS:<br>2111 Wilson Blvd, Suite 200<br>Arlington, Virginia 22201<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **Demand Jury Trial**<br><br><br><br><br>DISCRIMINATION, 33 U.S.C. § 948a<br>BREACH OF CONTRACT and<br>COVENANT OF GOOD FAITH<br>RETALIATORY DISCHARGE |

## COMPLAINT  FOR DAMAGES

### I. PRELIMINARY STATEMENT

Plaintiffs, David Sickle and Matthew Elliott, for their complaint allege:

1.        This is an action arising under (1) the common law of breach of contract; (2)

discrimination and retaliatory discharge for exercise of protected rights under the Longshore

Harbor Workers Compensation Act (LHWCA) and the Defense Base Act (DBA), 33 U.S.C. §

1

948a; (3) breach of covenant of good faith and fair dealing; and (4) public policy retaliatory discharge and punitive damages.

2.     This complaint is filed due to actions of the Defendants, in conspiracy with each other, to defeat the right of American Citizens to receive their lawful benefits and compensation under the DBA and LHWCA, threatening and retaliating against individuals for exercise of rights or making reports and testifying on behalf of injured individuals, namely Matthew Elliott and David Sickle, breaching their contracts of employment and their obligations of good faith and fair dealing under said contracts, and violating public policy under the common law of the United States in discharging both Plaintiffs for exercising rights under the LHWCA, namely to receive medical and disability benefits for injury in the course and scope of employment for Defendant Torres AES.

## II. JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over the asserted claims under 28 U.S.C. § 1331 (Federal Question), and under 28 U.S.C. § 1332 (Diversity of Citizenship) in that all plaintiffs are of diverse citizenship from all defendants and the amount in controversy exceeds $75,000 exclusive of costs.   The Court has personal jurisdiction over the Defendants because they are subject to the District of Columbia long-arm statute, D.C. Code § 13-423 and because Defendants are present and transact business in the District of Columbia, and because the acts and omissions complained of occurred, on information and belief, in the District of Columbia through contracts of Defendants with the U.S. Departments of Defense and State, and such contracts were entered into in the District of Columbia or were to be partially performed in the

District of Columbia, and acts and representations of Defendants had effects in the District of Columbia.

5.    Venue is proper in the United States District Court for the District of Columbia under 28 U.S.C. § 1391(b) and (c).

6.    These proceedings are brought pursuant to the provisions of the LHWCA, 33 U.S.C. § 948a.

7.    David Sickle has a long history of performing as a medic, first in the Navy as a Corpsman where he was injured and decorated, for 27 years, until he was honorably discharged; then for companies contracting with the United States government in Iraq and Afghanistan in support of Operation Iraqi Freedom and Operation Enduring Freedom.  He obtained a one-year contract with Defendant Torres AES in February of 2009, and worked for a year as the medic at Forward Operating Base (FOB) Shield in Iraq under a DOD subcontract related to defense.  He was Medical Officer for Torres at FOB Shield.

8.    Matthew Elliott obtained a one year contract for force protection and guarding of camps in Iraq for Torres AES.  In 2010, Mr. Scott Torres, wanted Mr. Elliott to go under contract at FOB Shield in Iraq as Kennel Master over their Canine unit and bring their Canine standards up in order to pass inspection and regulations for Canine units used by the military in Iraq.  He signed a one-year contract, and Mr. Scott Torres informed him that he would need to sign the one-year contract in order to be in compliance with DOD regulations.  Therefore, Mr. Elliott agreed to the one-year contract and forewent his other one-year contract with Torres AES.

9.      Mr. Elliott is an experienced Kennel Master and was performing badly needed services for Torres AES at FOB Shield where they kept 8- dogs for explosive detection. The program for kennel master was deficient and would not pass certification. Mr. Elliott owns a K-9 company Security Art Corporation and Special Operation Detective Agency. In the several months of performing that contract, Mr. Elliott brought Torres' Kennel to a high level of performance and proper standards for certification and fulfilled all of his duties in an outstanding manner.

10.     While working for Torres AES, Mr. Elliott was asked to help place sandbags. After handling 400 sandbags weighing approximately 60 pounds apiece and stacking them, Mr. Elliott felt a pop in his back which was witnessed by Mr. Sickle. Mr. Sickle examined Mr. Elliott's back as Medical Officer and determined he had likely herniated a disk.

11.     This injury occurred on March 15, 2010 and was reported to Mr. Sickle, the medical officer who prepared a report. See attached report, **attached hereto as Exhibit A.**

12.     Mr. Sickle, the medical officer employed by Defendant Torres AES under the attached contract at FOB Shield, saw Mr. Elliott at FOB Shield contemporaneous with the injury, for his back injury and recommended that he obtain an MRI as he had low back injury at L4- to S1 of his lumbar spine, with sciatica and radicular pain down the left leg and into his foot. Mr. Sickle filled out the attached Torres report form showing that Mr. Elliott moved 400 sand bags on March 15, 2010, for upgrading of the Kennel on base, **Exhibit A**. Mr. Sickle saw Mr. Elliott for the same pain that had not resolved, only became worse, and radiated down his left leg. This

4

continued through April 12.  Mr. Sickle gave Mr. Elliott pain medication but advised he needed to go back to the United States to get further attention for this back injury under the DBA.

13.     After being refused benefits under the DBA and being terminated by Defendants, Mr. Elliott was forced to hire counsel and did so, and applied for benefits under the DBA and began to receive medical benefits, treatment and bi-weekly temporary total disability benefits, and also received an MRI showing a herniated disc and received back surgery paid for by the insurance carrier on July 7, 2010.

14.     At the same time that Mr. Elliott was receiving his DBA benefits, Mr. Sickle received a one year contract with Torres from June 1, 2010 until June 1, 2011 to continue as medical officer at FOB Shield.

15.     Beginning at the end of June of 2010, Torres officers and agents began to intimidate and threaten Mr. Sickle, informing him that they were upset with his filling out the attached medical report on Mr. Elliott.  They stated that they believed Mr. Elliott faked his injury.  Mr. Sickle insisted that no such thing happened, and he stood by his report.  Scott Torres and other officers and agents of Torres AES informed Mr. Sickle that they were sending him home for 30 days to "think things over," by which Mr. Sickle understood them to mean he had to recant his medical report on Mr. Elliott in order for him to continue in Iraq under his contract. When Mr. Sickle refused to recant the medical report on Mr. Elliott, Scott Torres wrote Mr. Sickle an e mail informing him he was not welcome back with Torres in Iraq.

16.     Mr. Elliott returned home for a planned rest and recreation and medical leave  on April 30, 2010 , following his injury.  He planned to have his back looked at during his time at

home.  He was set to return on May 16, 2010.  Prior to his return, and with knowledge of his

DBA injury claim, Mr. Scott Torres discharged Mr. Elliott without any notice.  The contract is a

year contract and requires a 28 day notice by certified mail to Mr. Elliott to terminate the

contract.  Mr. Elliott received no such notice.   Scott Torres notified him by e mail when he was

on leave and obtaining medical attention for his back injury on the job for Torres, and set to

return to Iraq that his contract was terminated.   The DBA injury claim was being handled by Mr.

Elliott's counsel in Washington, D.C. and Torres Defendants made representations to insurance

company representatives that were sent to the District of Columbia concerning Torres

defendants' claims that Mr. Elliott was terminated and the reasons for that termination.

17.     Counsel for Torres AES represented that Mr. Elliott was terminated for filing a

false claim for injury, and that Mr. Sickle was fired for fraudulently testifying to and supporting

the injury claim and witnessing the injury, in the report of injury and refusing to back down,

which was communicated to counsel for Mr. Elliott in the District of Columbia.  Torres

terminated Matthew Elliott following his claim for a medical injury while working for Torres at

FOB Shield in Iraq.

18.     Mr. Elliott made $360 per day, six seven days a week, at FOB Shield under his

Torres contract.  Had Mr. Elliott been permitted to work through the end of his contract, he

would have made an additional $71,280.00.  In addition, he would have received this tax free for

2010 if he were permitted to come back to Iraq.  Because he was not permitted, he was caused to

be away from Iraq and in the United States in excess of the number of days permitted annually to

receive his pay income tax free.  He therefore has lost an additional $38,000.00 due to tax

liability occasioned by breach of contract and retaliatory discharge.  In addition, Mr. Elliott spent $4600.00 for his ROUND TRIP 2300 for his flight back to the United States which he needed to obtain medical treatment.  He seeks reimbursement for that round trip airfare as well.

19.    Had Mr. Sickle been permitted to work through the end of his contract, in June 2011, he would have made an additional $144,000.00 through the end of his contract in June of 2011.  He would also have received his pay tax free for 2010, but had to pay an additional $30,000 in taxes due to Defendants' breach.  The total amount claimed for loss for breach of contract damages for Mr. Elliott is $113,880.00, and for Mr. Sickle, 174,000.00.

## CLAIMS FOR RELIEF

### COUNT I
(Discrimination and Retaliatory Discharge, 33 U.S.C. § 948a)

20.    Plaintiffs repeat and incorporate by reference each allegation set forth in paragraphs 1 through 19 above.

21.    Under the DBA, which incorporates the LHWCA, it is unlawful to retaliate against any employee for claiming an injury on the job under these laws, or for assisting such an individual in the making or reporting of such a claim.  Section 948a of the LHWCA (33 U.S.C. § 948a) provides:

> It shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim compensation from such employer, or because he has testified or is about to testify in a proceeding under this chapter…. Any employee so discriminated against shall be restored to his employment and shall be compensated by his employer for any loss of wages arising out of such discrimination….

22.     Mr. Sickle's report was given to Mr. Elliott for use in the DBA proceeding. Defendants discriminated against and fired Mr. Sickle and Mr. Elliott in retaliation for making a claim under the DBA, as a result of which Plaintiffs lost income, benefits, and interest thereon.

23.     As a direct result of discrimination and retaliation against Plaintiffs, they have lost their jobs and incurred attorneys fees, and are entitled to an award of restitution of their jobs, payment of their lost wages, benefits, interest thereon, and reasonable attorneys fees.

## COUNT II
### (Breach of Contract, and Covenant of Good Faith and Fair Dealing)

24.     Plaintiffs repeat and incorporate by reference each allegation set forth in paragraphs 1 through 23 above.

25.     Defendants entered into written agreements with Plaintiffs for a specific term and breached those contracts, anticipatorily repudiating the contracts, and the Covenant of Good Faith and Fair Dealing by intentionally and improperly attempting to deprive both Plaintiffs of the fruits of performance under the written contracts including tax benefits, travel, and the option to renew said contracts and have continuous employment.

26.     As a direct result of those breaches, Plaintiffs suffered loss of wages until reemployed, benefits, interest, and attorneys fees.

27.     Mr. Elliott has replaced some of those lost wages through reemployment. Despite efforts to find replacement wages and work, Mr. Sickle has been unable to find work. Both plaintiffs are entitled to an award of damages for breach of contract, punitive damages for bad faith and malicious breach of the covenant of good faith and fair dealing, interest, and other consequential damages.

**COUNT III**
(Common Law Retaliatory Discharge Against Public Policy - Workers Compensation)

28.    Plaintiffs repeat and incorporate by reference each allegation set forth in paragraphs 1 through 27 above.

29.    There is a public policy to encourage workers to be able to file workers compensation claims under United States statutes set forth above, and retaliation against an injured worker for pursuing that claim is prohibited, and so is retaliation against a person supporting such injury through testifying in a medical report and supporting a person in their claim.

30.    Defendants wantonly, willfully, and maliciously retaliated against Mr. Elliott for pursuing his claim, and accused him of lying and committing fraud.  As a result, Plaintiffs are entitled to compensatory damages for pain and suffering.

31.    Defendants wantonly, willfully, and maliciously sought to intimidate Mr. Sickle from persisting in supporting what he wrote in his injury report as medical officer for Torres AES, and refusing to back down when Defendants threatened his job.  As such, Defendants retaliated against Mr. Sickle and fired him and Mr. Elliott in violation of public policy.  As a result of that Plaintiffs suffered out of pocket expenses, lost income, lost future income, pain and suffering and loss of reputation.

32.    Punitive damages to deter and punish Defendants conduct is warranted.

33.    Plaintiffs are entitled to an award of damages for lost income, lost future income, benefits, compensatory damages, interest, attorneys fees, and punitive damages.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs pray for judgment for Plaintiffs and for the following relief:

(a)     Judgment against Defendants for the lost income, lost future income and benefits, interest, out of pocket expenses, lost tax benefits, and attorneys fees under 33 U.S.C. 948a;

(b)     Judgment against Defendants for foreseeable breach of contract and covenant of good faith and fair dealing, including lost income, lost future income, out of pocket expenses, benefits, and lost tax benefits, as set forth above;

(c)     Judgment against Defendants for maliciously and intentionally retaliating against Plaintiffs for pursuing protected conduct under workers compensation law, in violation of public policy, for lost income, lost future income and benefits, out of pocket expenses, lost tax benefits, and consequential and compensatory damages;

(d)     Judgment against Defendants for punitive damages for wanton, wilfull and malicious breach of law and public policy, in an amount not to exceed $5,000,000.00

(e)     Reasonable attorneys' fees, and costs of the action;

(e)     Any other relief which the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable as a matter of law.

Respectfully submitted,

Dated: December 14th, 2011

Scott J. Bloch, Esq.
DC Bar No. 984264
LAW OFFICES OF SCOTT J. BLOCH, PA
1050 17th St., N.W., Suite 600
Washington, DC 20036
Tel. (202) 496-1290
Fax (202) 478-0479
sbloch@bcounsel.com
www.dcresultslawyers.com
Counsel for Plaintiffs

10



# TORRES
### Advanced Enterprise Solutions

2111 Wilson Blvd , Suite 200 • Arlington, VA 22201
t (703) 527-8088 • f (703) 351-8144 • www.torresco.com

## FROM MEDICAL OFFICER FOB SHIELD/ TORRES TEAM/IRAQ.

IN CASE OF KENNEL MASTER MATTHEW F ELLIOTT  SS LAST 4 5744

On March 15 2010 MR Elliott was moving over 400 military sand bags to upgrade the Kennel.

At some point he felt a sharp Radicular pain run down his left buttock, thigh, calf, foot. This stopped him from working on the sand bag issue. He came to my clinic in a lot of pain. After 35 years in the medical field it looked like a case of (NERVE ROOT DISORDER). He was given 200mg of HYDROCORTISONE SODIUM SUCCINATE INJECTION near the NERVE ROOT DISORDER. Then next day he began taking Diclofenac 75mg 2 times a day for 2weeks. He returned back to the clinic still in the same pain level April 4th 2010. He was giving NAPROXEN 500MG 2 times a day. A week later 12 April 2010 he was given PIROXICAM 20MG Until now with still a level 10 pain running down his left leg. He has a very hard time sitting for more then 5 min or trying to sleep

He NEEDS MRI with contrast of L-4 TO S-1 ASAP and better pain MEDS. HE NEEDS TO BE FOLLOWED BY THE DBA FOR CARE.

DOC DAVID SICKLE-MEDIACL OFFICER FOB SHIELD IRAQ.





EXHIBIT A