UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID SICKLE, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No: 1:11-cv-02224-CKK |
| v. ) | |
| ) | |
| TORRES ADVANCED ENTERPRISE ) | |
| SOLUTIONS, LLC (AKA TORRES ) | |
| AES, LLC), et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**FIRST AMENDED COMPLAINT  FOR DAMAGES**

I. PRELIMINARY STATEMENT

Plaintiffs, David Sickle and Matthew Elliott, for their First Amended complaint allege:

1.       This is an action arising under (1) the common law of breach of contract; (2)

discrimination and retaliatory discharge for exercise of protected rights under the Longshore

Harbor Workers Compensation Act (LHWCA) and the Defense Base Act (DBA), 33 U.S.C. §

948a; (3) breach of covenant of good faith and fair dealing; and (4) public policy retaliatory

discharge and punitive damages; (5) prima facie tort.

2.       This complaint is filed due to actions of the Defendants, in conspiracy with each

other, to defeat the right of American Citizens to receive their lawful benefits and compensation

under the DBA and LHWCA, threatening and retaliating against individuals for exercise of

rights or making reports and testifying on behalf of injured individuals, namely Matthew Elliott

and David Sickle, breaching their contracts of employment and their obligations of good faith

and fair dealing under said contracts, and violating public policy under the common law of the

United States in discharging both Plaintiffs for exercising rights under the LHWCA, namely to

receive medical and disability benefits for injury in the course and scope of employment for

Defendant Torres AES LLC.

## II. JURISDICTION AND VENUE

3.   This Court has subject matter jurisdiction over the asserted claims under 28 U.S.C. §

1331 (Federal Question), and under 28 U.S.C. § 1332 (Diversity of Citizenship) in that all

plaintiffs are of diverse citizenship from all defendants and the amount in controversy exceeds

$75,000 exclusive of costs.

4.   The Court has personal jurisdiction over the Defendants because they are subject to the

District of Columbia long-arm statute, D.C. Code § 13-423 and because Defendants are present

and transact business in the District of Columbia, and because the acts and omissions complained

of occurred, on information and belief, in the District of Columbia through contracts of

Defendants with the U.S. Departments of Defense and State, and such contracts were entered

into in the District of Columbia or were to be partially performed in the District of Columbia,

and acts and representations of Defendants had effects in the District of Columbia.  In addition,

Scott Torres, principal and owner of Torres AES LLC engaged in acts of dishonesty, fraud,

which he knew or reasonably should have known would be sent into the District of Columbia to

counsel for Plaintiffs, further misrepresenting facts to defeat the right of Plaintiff Matthew Elliott

to recover for disability benefits in retaliation for assertion of his rights.  On information and

belief, Defendant Scott Torres and Torres AES LLC engaged in negotiations with the United

States that had effects or performance occurred in the District of Columbia, utilized funds

appropriated in the District of Columbia in part for use by Defendants in contracts in Iraq at FOB

Shield as more specifically explained below.  Further Scott Torres and Torres AES LLC both

entered into teaming agreements with Sabre Security International in the District of Columbia for

the very contracts and subcontracts at issue at FOB Camp Shield in this case, and thus subjected

themselves to jurisdiction in the District of Columbia, as evidenced by their lawsuit with Sabre

Security International in the District of Columbia, *Sabre Security International v. Torres*

*Advanced Enterprise Solutions LLC,* Case No. 11-806 (D. D. C. 2011) (GK) (claims for breach

of contract, breach of covenant of good faith and fair dealing and tortuous interference against

Torres by Sabre).

   5.  Venue is proper in the United States District Court for the District of Columbia

under 28 U.S.C. § 1391(b) and (c).

   6.  These proceedings are brought pursuant to the provisions of the LHWCA, 33

U.S.C. § 948a.

   7.  David Sickle has a long history of performing as a medic, first in the Navy as a

Corpsman where he was injured and decorated, for 27 years, until he was honorably discharged;

then for companies contracting with the United States government in Iraq and Afghanistan in

support of Operation Iraqi Freedom and Operation Enduring Freedom.  He obtained a one-year

contract with Defendant Torres AES in February of 2009, and worked for a year as the medic at

Forward Operating Base (FOB) Shield in Iraq under a DOD subcontract related to defense.  He

was Medical Officer for Torres at FOB Shield.  He received a new contract dated June 1, 2010 to

run for one year, obligating Torres AES LLC to pay him $420 per day 6 days a week from June

1, 2010  thru June 1, 2011, with work to begin June 8, 2010, to be on site on call 24/7, and

requiring notice of 30 days in writing to terminate for cause, and notice 28 days in writing to

terminate the agreement without cause.

8.    Matthew Elliott obtained a one year contract for force protection and guarding of

camps in Iraq for Torres AES.  In 2010, Mr. Scott Torres, wanted Mr. Elliott to go under contract

at FOB Shield in Iraq as Kennel Master over their Canine unit and bring their Canine standards

up in order to pass inspection and regulations for Canine units used by the military in Iraq.  He

signed a one-year contract, and Mr. Scott Torres informed him that he would need to sign the

one-year contract in order to be in compliance with DOD regulations.  Therefore, Mr. Elliott

agreed to the one-year contract and forewent his other one-year contract with Torres AES.  The

contract was dated February 16, 2010, signed by Torres AES LLC on March 11, 2010, and

contains a contract period of February 16, 2010 through December 31, 2010 with a pay rate of

$360 per day, 6 days a week, to be on site on call 24/7, and requiring notice of 30 days in writing

to terminate for cause, and notice 28 days in writing to terminate the agreement without cause.

.

9.    Mr. Elliott is an experienced Kennel Master and was performing badly needed

services for Torres AES at FOB Shield where they kept 8- dogs for explosive detection.  The

program for kennel master was deficient and would not pass certification.  Mr. Elliott owns a K-

9 company Security Art Corporation and Special Operation Detective Agency.  In the several

months of performing that contract, Mr. Elliott brought Torres' Kennel to a high level of

performance and proper standards for certification and fulfilled all of his duties in an outstanding manner.

10.     While working for Torres AES under the above stated contract, Mr. Elliott was asked to help place sandbags.  After handling 400 sandbags weighing approximately 60 pounds apiece and stacking them, Mr. Elliott felt a pop in his back which was witnessed by Mr. Sickle. Mr. Sickle examined Mr. Elliott's back as Medical Officer and determined he had likely herniated a disk.

11.     This injury occurred on March 15, 2010 and was reported to Mr. Sickle, the medical officer who prepared a report.  See attached report, **attached hereto as Exhibit A.**

12.     Mr. Sickle, the medical officer employed by Defendant Torres AES under the attached contract at FOB Shield, saw Mr. Elliott at FOB Shield contemporaneous with the injury, for his back injury and recommended that he obtain an MRI as he had low back injury at L4- to S1 of his lumbar spine, with sciatica and radicular pain down the left leg and into his foot.  Mr. Sickle filled out the attached Torres report form showing that Mr. Elliott moved 400 sand bags on March 15, 2010, for upgrading of the Kennel on base, **Exhibit A**.  Mr. Sickle saw Mr. Elliott for the same pain that had not resolved, only became worse, and radiated down his left leg.  This continued through April 12.  Mr. Sickle gave Mr. Elliott pain medication but advised he needed to go back to the United States to get further attention for this back injury under the DBA.

13.     After being refused benefits under the DBA and being terminated by Defendants, Mr. Elliott was forced to hire counsel and did so, and applied for benefits under the DBA and began to receive medical benefits, treatment and bi-weekly temporary total disability benefits,

and also received an MRI showing a herniated disc and received back surgery paid for by the insurance carrier on July 7, 2010.

14.     At the same time that Mr. Elliott was receiving his DBA benefits, Mr. Sickle received a one year contract with Torres from June 1, 2010 until June 1, 2011 to continue as medical officer at FOB Shield.

15.     Beginning at the end of June of 2010, Torres officers and agents began to intimidate and threaten Mr. Sickle, informing him that they were upset with his filling out the attached medical report on Mr. Elliott and supporting his DBA claim.  They stated that they believed Mr. Elliott faked his injury.  Mr. Sickle insisted that no such thing happened, and he stood by his report.  Scott Torres and other officers and agents of Torres AES informed Mr. Sickle that they were sending him home for 30 days to "think things over," by which Mr. Sickle understood them to mean he had to recant his medical report on Mr. Elliott in order for him to continue in Iraq under his contract.  When Mr. Sickle refused to recant the medical report on Mr. Elliott, Scott Torres wrote Mr. Sickle an e mail informing him he was not welcome back with Torres in Iraq.

16.     Mr. Elliott returned home for a planned rest and recreation and medical leave on April 30, 2010 , following his injury.  He planned to have his back looked at during his time at home.  He was set to return on May 16, 2010.  Prior to his return, and with knowledge of his DBA injury claim, Mr. Scott Torres on May 9, 2010 in an e mail discharged Mr. Elliott without any notice.  The contract is a year contract and requires a 28 day notice by certified mail to Mr. Elliott to terminate the contract.  Mr. Elliott received no such notice.   Scott Torres notified him

by e mail when he was on leave and obtaining medical attention for his back injury on the job for

Torres, and set to return to Iraq that his contract was terminated.   Both Scott Torres and Torres

AES LLC were aware of the filing of the DBA claim at the time they decided to discharge Mr.

Elliott from employment.  The DBA injury claim was being handled by Mr. Elliott's counsel in

Washington, D.C. and both Torres Defendants made representations to insurance company

representatives that were sent to the District of Columbia concerning Torres defendants' claims

that Mr. Elliott was terminated and the reasons for that termination with knowledge that such

would be made to the District of Columbia.  Scott Torres and Torres AES LLC were aware of

Mr. Sickle's accident report verifying Mr. Elliott's injury on the job prior to his return home for

R&R.  At Defendants' direction, agents of Defendants in Iraq approached Mr. Sickle and

intimidated him and threatened him that if he did not recant the accident report of Mr. Elliott's

back injury, he would be out of a job (after having just signed a one-year contract with Mr.

Sickle), and when Mr. Sickle refused, they sent him home to the United States for thirty days to

think things over, meaning to decide if he wanted to change his mind about the accident report

on Mr. Elliott or recanting.  When he refused to recant, his contract was terminated.

17.     Counsel for Torres AES represented that Mr. Elliott was terminated for filing a

false claim for injury, and that Mr. Sickle was fired for fraudulently testifying to and supporting

the injury claim and witnessing the injury, in the report of injury and refusing to back down,

which was communicated to counsel for Mr. Elliott in the District of Columbia.  Torres

terminated Matthew Elliott following his claim for a medical injury while working for Torres at

FOB Shield in Iraq and expressed great hostility to and animus toward the claim for

7

compensation and acted with great anger toward both Elliott and Sickle regarding their alleged

falsification of the workers compensation claim and Sickle's support of it.  Scott Torres and

Torres AES were instrumental in firing both defendants in part driven by animus over the filing

of what was a valid DBA claim but which Scott Torres regarded as faked.

18.     Mr. Elliott made $360 per day, six seven days a week, at FOB Shield under his

Torres contract.  Had Mr. Elliott been permitted to work through the end of his contract, he

would have made an additional $71,280.00.  In addition, he would have received this tax free for

2010 if he were permitted to come back to Iraq.  Because he was not permitted, he was caused to

be away from Iraq and in the United States in excess of the number of days permitted annually to

receive his pay income tax free.  He therefore has lost an additional $38,000.00 due to tax

liability occasioned by breach of contract and retaliatory discharge.  In addition, Mr. Elliott spent

$4600.00 for his ROUND TRIP 2300 for his flight back to the United States which he needed to

obtain medical treatment.  He seeks reimbursement for that round trip airfare as well.

19.     Had Mr. Sickle been permitted to work through the end of his contract, in June

2011, he would have made an additional $144,000.00 through the end of his contract in June of

2011.  He would also have received his pay tax free for 2010, but had to pay an additional

$30,000 in taxes due to Defendants' breach.   The total amount claimed for loss for breach of

contract damages for Mr. Elliott is $113,880.00, and for Mr. Sickle, 174,000.00.

## CLAIMS FOR RELIEF

### COUNT I
(Discrimination and Retaliatory Discharge, 33 U.S.C. § 948a)

20.     Plaintiffs repeat and incorporate by reference each allegation set forth in paragraphs 1 through 19 above.

21.     Under the DBA, which incorporates the LHWCA, it is unlawful to retaliate against any employee for claiming an injury on the job under these laws, or for assisting such an individual in the making or reporting of such a claim.  Section 948a of the LHWCA (33 U.S.C. § 948a) provides:

> It shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim compensation from such employer, or because he has testified or is about to testify in a proceeding under this chapter…. Any employee so discriminated against shall be restored to his employment and shall be compensated by his employer for any loss of wages arising out of such discrimination….

22.     Mr. Sickle's report was given to Mr. Elliott for use in the DBA proceeding. Defendants discriminated against and fired Mr. Sickle and Mr. Elliott in retaliation for making a claim under the DBA, as a result of which Plaintiffs lost income, benefits, and interest thereon.

23.     As a direct result of discrimination and retaliation against Plaintiffs, they have lost their jobs and incurred attorneys fees, and are entitled to an award of restitution of their jobs, payment of their lost wages, benefits, interest thereon, and reasonable attorneys fees.

## COUNT II
(Breach of Contract, and Covenant of Good Faith and Fair Dealing)

24.     Plaintiffs repeat and incorporate by reference each allegation set forth in paragraphs 1 through 23 above.

25.     Defendants entered into written agreements with Plaintiffs for a specific term of one year, and had a duty to pay Plaintiffs under the terms of the written agreements and not to

terminate said agreements except in writing with 28 days written notice, 30 days notice if for

cause: for Mr. Elliott, one year for being kennel Master at FOB, and for Mr. Sickle one year as

FOB Shield Medic all as afore mentioned; defendants breached those written contracts by

terminating said contracts without proper notice, failing to pay Plaintiffs or allow them to work

through the end of the contracts, by anticipatorily repudiating the contracts, and the Covenant of

Good Faith and Fair Dealing by intentionally and improperly attempting to deprive both

Plaintiffs of the fruits of performance under the written contracts including tax benefits, travel,

and the option to renew said contracts and have continuous employment for exercising rights

under the contracts, to work and to report injuries and do their jobs according to their contracts.

They engaged in improper and intentionally wrongful behavior in accusing both plaintiffs of

trying to file a fraudulent or faked injury claim and of dishonesty in carrying out their duties, and

punishing each for failing to do what was wrongfully demanded of them by Defendants.

26.	As a direct result of those breaches, Plaintiffs suffered loss of wages until

reemployed, benefits, interest, and attorneys fees.

27.	Mr. Elliott has replaced some of those lost wages through reemployment.  Despite

efforts to find replacement wages and work, Mr. Sickle has been unable to find work.  Both

plaintiffs are entitled to an award of damages for breach of contract, punitive damages for bad

faith and malicious breach of the covenant of good faith and fair dealing, interest, and other

consequential damages.

**COUNT III**
(Common Law Retaliatory Discharge Against Public Policy - Workers Compensation)

10

28.     Plaintiffs repeat and incorporate by reference each allegation set forth in paragraphs 1 through 27 above.

29.     There is a public policy to encourage workers to be able to file workers compensation claims under United States statutes set forth above, and retaliation against an injured worker for pursuing that claim is prohibited, and so is retaliation against a person supporting such injury through testifying in a medical report and supporting a person in their claim.

30.     Defendants wantonly, willfully, and maliciously retaliated against Mr. Elliott for pursuing his claim, and accused him of lying and committing fraud.  As a result, Plaintiffs are entitled to compensatory damages for pain and suffering.

31.     Defendants wantonly, willfully, and maliciously sought to intimidate Mr. Sickle from persisting in supporting what he wrote in his injury report as medical officer for Torres AES, and refusing to back down when Defendants threatened his job.  As such, Defendants retaliated against Mr. Sickle and fired him and Mr. Elliott in violation of public policy.  As a result of that Plaintiffs suffered out of pocket expenses, lost income, lost future income, pain and suffering and loss of reputation.

32.     Punitive damages to deter and punish Defendants conduct is warranted.

33.     Plaintiffs are entitled to an award of damages for lost income, lost future income, benefits, compensatory damages, interest, attorneys fees, and punitive damages.

## COUNT IV
(Conspiracy and Prima Facie Tort)

34.     Plaintiffs repeat and incorporate by reference each allegation set forth in paragraphs 1 through 33 above.

35.     Defendants conspired with their insurance carrier, CNA, to commit the acts aforesaid against the Plaintiffs, with effects in the District of Columbia that they knew or should have known would have effects in the District of Columbia.  Their acts amount to a civil conspiracy to harm Plaintiffs.  It is also a conspiracy to deprive injured and disabled workers of DBA benefits in violation of the DBA.  It is also a conspiracy to commit fraud.  It is also a conspiracy to breach contracts with employees.

36.     Defendants intentionally inflicted harm on Plaintiffs and their families, which caused special damages including loss of property, loss of consortium, loss of savings, loss of income, reputation, and other special damages.  This conduct by Defendants was without justification, which would otherwise be lawful, and constitutes a prima facie tort, and conspiracy to commit a tort.  They had willful intent to injure claimants and/or had a substantial certainty that injury was likely to occur to their persons, family, and finances and personal wellbeing -- all as more particularly and specifically pleaded in paragraphs 1-33 above.

37.     The conspiracy to commit these torts, breaches of duty, and prima facie tort actually caused the damages set forth herein.

38.     In all the actions described in this complaint, defendants acted through their agents, officers, attorneys, representatives, insurance carriers through their officers, agents, attorneys and insurance adjustors and managers, which were acting in the course and scope of employment or agency or representation for defendant contracting companies and insurance

carriers, and which  defendant companies ratified all of the acts described in this complaint.

Plaintiffs have been damaged in their persons, property, and out of pocket expenses.

39.     The conduct of Defendants was wanton, willful, malicious, oppressive,

intentional, fraudulent, justifying an award of punitive damages to punish this conduct and deter

others from doing the same in the future.

40.     Defendants wantonly, willfully, and maliciously retaliated against Mr. Elliott for

pursuing his claim, and accused him of lying and committing fraud.  As a result, Plaintiffs are

entitled to compensatory damages for pain and suffering.

41.     Defendants wantonly, willfully, and maliciously sought to intimidate Mr. Sickle

from persisting in supporting what he wrote in his injury report as medical officer for Torres

AES, and refusing to back down when Defendants threatened his job.  As such, Defendants

retaliated against Mr. Sickle and fired him and Mr. Elliott in violation of public policy.  As a

result of that Plaintiffs suffered out of pocket expenses, lost income, lost future income, pain and

suffering and loss of reputation.

42.     Punitive damages to deter and punish Defendants conduct is warranted.

43.     Plaintiffs are entitled to an award of damages for lost income, lost future income,

benefits, compensatory damages, interest, attorneys fees, and punitive damages.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs pray for judgment for Plaintiffs and for the following relief:

(a)     Judgment against Defendants for the lost income, lost future income and benefits,
interest, out of pocket expenses, lost tax benefits, and attorneys fees under 33 U.S.C. 948a;

(b)     Judgment against Defendants for foreseeable breach of contract and covenant of

good faith and fair dealing, including lost income, lost future income, out of pocket expenses, benefits, and lost tax benefits, as set forth above;

(c)     Judgment against Defendants for maliciously and intentionally retaliating against Plaintiffs for pursuing protected conduct under workers compensation law, in violation of public policy, for lost income, lost future income and benefits, out of pocket expenses, lost tax benefits, and consequential and compensatory damages;

(d)     Judgment against Defendants for conspiracy and prima facie tort and for lost income, lost future income and benefits, out of pocket expenses, lost tax benefits, and consequential and compensatory damages;

(e)     Judgment against Defendants for punitive damages for wanton, wilfull and malicious breach of law and public policy, in an amount not to exceed $5,000,000.00

(e)     Reasonable attorneys' fees, and costs of the action;

(f)     Any other relief which the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable as a matter of law.

Respectfully submitted,

Dated: April 9, 2012            _/s/_____
                                Scott J. Bloch, Esq.
                                DC Bar No.  984264
                                LAW OFFICES OF SCOTT J. BLOCH, PA
                                1050 17th St., N.W., Suite 600
                                Washington, DC  20036
                                Tel.  (202) 496-1290
                                Fax (202) 478-0479
                                sbloch@bcounsel.com
                                www.dcresultslawyers.com
                                Counsel for Plaintiffs