# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DAVID SICKLE, *et. al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    Civil No. 11-cv-2224 (KBJ) |
| | ) |
| TORRES ADVANCED ENTERPRISE | ) |
| SOLUTIONS, LLC, *et. al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

Plaintiffs David Sickle and Matthew Elliot ("Plaintiffs") are former military sub-contractors for Torres Advanced Enterprise Solutions, LLC ("Torres AES"). Plaintiffs maintain that Torres AES—acting through one of the principals, Scott Torres—improperly discharged them in retaliation for Elliot's having lodged a workers' compensation claim after he suffered a back injury while on the job. Plaintiffs have brought the instant action against Defendants Torres AES and Scott Torres ("Defendants"), alleging retaliatory discharge for Elliot's having sought workers' compensation benefits under the Defense Base Act ("DBA"), in violation of 33 U.S.C. § 948a, and also claiming several tort and contract breaches in violation of common law. (First Amended Compl. ("Am. Compl."), ECF No. 7, ¶ 1.)

Before this Court at present is Defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6). (Defs.'

Mot. to Dismiss First Amended Compl. ("Defs.' Mot."), ECF No. 10, at 1.)[1] Defendants' motion to dismiss is primarily predicated on the argument that Plaintiffs' federal action is procedurally improper because the DBA and the Longshore and Harbor Workers' Compensation Act ("LHWCA"), on which the DBA is based, establish the exclusive remedy for Plaintiffs' alleged injuries. The Court agrees, and for the specific reasons discussed below, Defendants' motion to dismiss the amended complaint is **GRANTED**. A separate order consistent with this opinion will follow.

## I. BACKGROUND

### A. Facts Alleged In The Complaint

Torres AES is a military defense contractor that contracts with the Department of Defense, the Department of State, and Saber Security International (another defense contractor) to provide security and other services at United States installations abroad. (Am. Compl. ¶ 4.) Sickle and Elliot are both sub-contractors who worked for Torres AES at Forward Operating Base Shield ("FOB Shield") in Iraq during 2010. (*Id.* ¶ 7-8.) Torres AES first hired Sickle as a medic at FOB Shield in February 2009, and it executed a new, one-year contract with Sickle on June 1, 2010. (*Id.* ¶ 7.) Torres AES contracted with Elliot to work at FOB Shield as a kennel master, managing trained dogs used for explosive detection; this employment contract commenced on February 16, 2010, and was effective through December 31, 2010. (*Id.* ¶¶ 8-9.)

On March 15, 2010, approximately one month after beginning work at FOB Shield, Elliot injured his back while on base. (*Id.* ¶ 10-11.) According to the amended

---

[1] Defendants have also moved to dismiss the complaint against Scott Torres for lack of personal jurisdiction under Rule 12(b)(2). (*See* Defs.' Motion at 1.) The Court need not reach this alternative ground for dismissal, *see infra* Part III(C), and declines to do so.

complaint, Elliot was asked to help place sandbags on the base, and he suffered what was later thought to be a herniated disc after handling and stacking nearly 400 sandbags that were approximately 60 pounds each.  (*Id.* ¶ 10.)  As the Medical Officer that Torres AES employed on base, Sickle examined Elliot's back injury, treated him with pain medication, and recommended that Elliot obtain further medical treatment in the United States.  (*Id.* ¶¶ 10, 12.)

On April 30, 2010, Elliot returned to the United States.  (*Id.* ¶ 16.)  Sickle wrote an undated report about Elliot's injury that was faxed on May 12, 2010.  (*Id.* ¶11; Ex. A, ECF No. 7-1.)  After a failed first attempt to obtain DBA workers' compensation benefits as a result of his injury, Elliot received medical coverage and temporary total disability benefits pursuant to the DBA's administrative process.  (Am. Compl. ¶ 13.)

Plaintiffs allege that Elliot was set to return to duty on May 16, 2010, but that Scott Torres terminated Elliot by email and without advance written notice on May 9, 2010, after learning of Elliot's DBA workers' compensation claim.  (*Id.* ¶ 16.)[2] Plaintiffs further maintain that Torres AES and Scott Torres represented to insurance company representatives that the benefits claim was false and that Elliot was fired for filing a false claim.  (*Id.*)

As concerns Sickle, Plaintiffs allege that Torres AES and Scott Torres "were aware of Mr. Sickle's accident report verifying Mr. Elliot's injury on the job prior to his return home," (*id.* ¶ 16), and that they dispatched agents in Iraq during June 2010, to "intimidate[] and threaten[]" Sickle to retract his report about Elliot's injury (*id.*

---

[2]  The amended complaint states that Elliot's contract was a year-long agreement that "requires a 28 day notice by certified mail to Mr. Elliot to terminate the contract." (Am. Compl. ¶ 16.)  Whether the contract requires written notice for effective termination is a fact in dispute, the resolution of which is irrelevant to the resolution of this action.

¶ 15).  When Sickle refused, Defendants allegedly expressed "great anger" and sent Sickle back to the United States for thirty days to "think things over."  (*Id. ¶¶* 16-17.) After Sickle again refused to withdraw his report regarding Elliot's injury, Scott Torres allegedly terminated Sickle without the required notice, and also in retaliation for assisting Elliot with his DBA claim.  (*Id. ¶* 16.)

### B. Procedural History

Plaintiffs filed a complaint in this court on December 14, 2011.  (ECF No. 1.) On April 9, 2012, Plaintiffs filed an amended complaint, claiming that Elliot and Sickle were improperly discharged in retaliation for the filing of a workers' compensation claim that was valid under the DBA "but which Scott Torres regarded as faked."  (Am. Compl. ¶ 17.)  The amended complaint alleges four counts against Defendants Torres AES and Scott Torres; to wit:  (1) discrimination and retaliatory discharge in violation of 33 U.S.C. § 948a (Count I); (2) breach of contract and the covenant of good faith and fair dealing (Count II); (3) common law improper retaliatory discharge for the filing of a worker's compensation claim (Count III), and (4) "[c]onspiracy and prima facie tort" on the grounds that Defendants conspired with their workers' compensation insurance carrier to commit the acts alleged in the amended complaint (Count IV).  (*Id. ¶¶* 20-43.)

On April 27, 2012, Defendants filed a motion to dismiss the complaint in its entirety.  Defendants' arguments expressly rely on Federal Rule of Civil Procedure 12(b)(6), dismissal for failure to state a claim upon which relief can be granted, and also Rule 12(b)(2), lack of personal jurisdiction in regard to Scott Torres.  (Defs.' Mot. at 1.)  As explained further below, in regard to the 12(b)(6) argument, Defendants first maintain that the DBA provides the exclusive remedy for the injury that Plaintiffs

allege they have suffered such that Plaintiffs are precluded from bringing an action seeking redress in this Court. Notably, this "exclusivity" argument implicates both exhaustion and preemption principles. (*See* Mem. in Support of Defs.' Mot. to Dismiss First-Amended Complaint ("Defs.' Mem."), ECF No. 10, at 13, 15.[3]) Defendants argue, in the alternative, that even if it is legally proper for Plaintiffs to have brought a § 948a claim in federal court, Plaintiffs have failed to allege facts sufficient to demonstrate retaliatory termination under the DBA. (*Id.* at 19.) Defendants also argue, in regard to Plaintiffs' common law claims, that Plaintiffs have failed to state claims for breach of contract/breach of the covenant of good faith and fair dealing (*id.* at 22), and for retaliatory termination in violation of public policy, and that the District of Columbia does not recognize a cause of action for a "prima facie tort" (*id.* at 29).

Defendants' motion to dismiss became ripe on June 1, 2012. The case was transferred to the undersigned on April 5, 2013, and this Court held a hearing on June 6, 2013.

## II.    LEGAL LANDSCAPE

### A.    Motion to Dismiss Standards

Although Defendants have expressly grounded their motion to dismiss on Rules 12(b)(6) and 12(b)(2), their primary dismissal arguments are that any claims arising from Plaintiffs' allegedly retaliatory discharges must be resolved through the DBA's administrative claims process, and that the DBA preempts Counts II-IV of Plaintiffs' amended complaint. It is unclear in this District whether a defendant should assert such

---

[3] Page numbers refer to the original document numbers at the bottom of each page, and not the numbers that the Court's electronic filing system assigns.

exhaustion and preemption defenses in a Rule 12(b)(1) motion, as jurisdictional defects, or in a Rule 12(b)(6) motion for failure to state a claim. *See, e.g.*, *Hansen v. Billington*, 644 F. Supp. 2d 97, 102 (2009); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 593 F. Supp. 2d 29, 40 n.5 (D.D.C. 2008). The Court will therefore lay out the governing standard for each rule.

A Rule 12(b)(1) motion tests whether this Court has subject matter jurisdiction over the complaint. Under Rule 12(b)(1), the plaintiff bears the burden of establishing the existence of jurisdiction by a preponderance of the evidence. *See Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006); *see also Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (noting that a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority"). When considering a facial challenge to subject matter jurisdiction, such as the one Defendants make, a court must accept as true all factual allegations contained in the complaint, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *See Flores v. District of Columbia*, 437 F. Supp. 2d 22, 28 (D.D.C. 2006) (quoting *Erby*, 424 F. Supp. 2d at 181). The court may, however, look beyond the complaint's allegations when deciding a facial challenge so long as it "still accept[s] the factual allegations in [t]he complaint as true." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (internal quotation marks and citations omitted).

A Rule 12(b)(6) motion, by contrast, tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief

that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). In deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept the plaintiff's factual allegations as true and construe the complaint liberally, grant[ing] plaintiff[] the benefit of all inferences that can be derived from the facts alleged[.]" *Browning*, 292 F.3d at 242 (alterations in original) (internal quotation marks and citation omitted). "But the Court need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (citation omitted). Moreover, if the facts as alleged and liberally construed fail to establish that a plaintiff has stated a claim upon which relief can be granted, the Rule 12(b)(6) motion must be granted. *See, e.g.*, *Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

Under either standard and as a matter of law, the Court finds that Plaintiffs cannot pursue a DBA retaliation claim in this Court without first utilizing the DBA's administrative process (which neither Plaintiff has done) and that the DBA preempts the causes of action that Plaintiffs assert in Counts II-IV of their amended complaint. Consequently, the Court need not, and will not, weigh in on the Rule 12(b)(1) versus Rule 12(b)(6) debate. *See, e.g., In re Rail Freight Fuel Surcharge Anti-Trust Litig.*, 593 F. Supp. 2d at 40 n.5; *Temples v. U.S. Postal Serv.*, No. 3:12-34, 2012 WL 1952655, at *2 (D.S.C. May 8, 2012) (report and recommendation), *adopted by* 2012 WL 1952299 (D.S.C. May 30, 2012).

**B.    The Defense Base Act & The Longshore and Harbor Workers' Compensation Act**

Congress enacted the DBA, 42 U.S.C. §§ 1651-1655, in 1941, to create a federal workers' compensation system for civilian employees stationed at military installations "outside the continental United States[.]"  42 U.S.C. § 1651(a)(2).  Congress later expanded the DBA to cover contractors working at these bases.  *See Univ. of Rochester v. Hartman*, 618 F.2d 170, 172-73 (2d Cir. 1980).  Notably, instead of fashioning a new workers' compensation system for workers stationed overseas at foreign military bases, Congress incorporated into the DBA provisions of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950, a federal workers' compensation system for maritime workers enacted in 1927.  *See* 42 U.S.C. § 1651(a) (providing that "the provisions of the [LHWCA] shall apply in respect to the injury or death of any employee engaged in any employment" at military, air, and naval bases outside the United States).

As a workers' compensation system, the DBA/LHWCA scheme forges a compromise between employees and employers.  *See Morrison-Knudsen Const. Co. v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 461 U.S. 624, 636 (1983).  "Employers relinquish[] their defenses to tort actions in exchange for limited and predictable liability.  Employees accept the limited recovery because they receive prompt relief without the expense, uncertainty, and delay that tort actions entail."  *Id.* Claims for benefits under the DBA are processed under a six-step administrative procedure through the Department of Labor ("DOL"), including available hearings before an Administrative Law Judge ("ALJ"), appeals to the Department of Labor's

Benefits Review Board ("BRB"), and ultimate appellate review in federal court. *See*
*Brink v. XE Holding, LLC*, 910 F. Supp. 2d 242, 246 (D.D.C. 2012) (citation omitted).

The LHWCA, and thus the DBA, expressly prohibits discrimination against
employees who claim benefits and those who assist such employees with their claims:

> It shall be unlawful for any employer or his duly authorized agent to
> discharge or in any other manner discriminate against an employee as
> to his employment because such employee has claimed or attempted to
> claim compensation from such employer, or because he has testified or
> is about to testify in a proceeding under this chapter.

33 U.S.C. § 948a. The Deputy Commissioner of Labor must impose a penalty ranging
from $1,000 to $5,000 on employers who violate these anti-retaliation provisions and
order that employees who continue to be qualified to perform their jobs be reinstated
and receive back pay. *Id.*

The regulations implementing the LHWCA/DBA lay out the administrative
procedure for the DOL's Office of Workers' Compensation Programs ("OWCP") to
process claims alleging discrimination or retaliation in violation of Section 948a. *See*
20 C.F.R. §§ 702.271-.274. Within five days of an employee submitting a
discrimination complaint, a DOL district director must notify the employer and begin an
inquiry into the matter, which may include interviews with the employee, employer, and
others; the district director may also convene an informal conference between the
employee and employer. *Id.* § 702.271(b), (c). The district director will then make a
recommendation on whether any retaliation has occurred and, if so, whether OWCP
should assess any penalty against the employer and/or order that the employer make the
employee whole through reinstatement and back compensation. *Id.* §§ 702.271(d),
707.272(a). If either party disagrees with the district director's recommendation, the
district director must refer the matter to the Office of the Chief Administrative Law

Judge for a formal hearing and final determination of any disputed issues. *Id.*

§§ 702.272(b), 702.273. Appeal from this determination may be taken to the BRB. *Id.*

§§ 702.273, 702.391-702.394. Within sixty days of receiving the BRB's final order,

"[a]ny person adversely affected or aggrieved by [the order] may obtain a review of that

order in the United States court of appeals for the circuit in which the injury

occurred[.]" 33 U.S.C. § 921(c).[4] Finally, "[i]f any employer or his officers or agents

fails to comply with a [final] compensation order making an award, . . . any beneficiary

of such award or the deputy commissioner making the order, may apply for the

enforcement of the order to the Federal district court for the judicial district in which

the injury occurred[.]" *Id.* § 921(d).

> The DBA also contains a broad exclusivity clause:
>
> The liability of an employer, contractor (or any subcontractor or subordinate subcontractor with respect to the contract of such contractor) under this chapter shall be exclusive and in place of all other liability of such employer, contractor, subcontractor, or subordinate contractor to his employees (and their dependents) coming within the purview of this chapter, under the workmen's compensation law of any State, Territory, or other jurisdiction, irrespective of the place where the contract of hire of any such employee may have been made or entered into.

42 U.S.C. § 1651(c) (emphasis added); *see also, e.g.*, *Brink*, 910 F. Supp. 2d at 253-54

(DBA's exclusivity provision bars plaintiffs' tort claims); *Martin v. Halliburton*, 808 F.

Supp. 2d. 983, 992 (S.D. Tex. 2011) (same).[5]

---

[4] There is a circuit split over whether circuit or district courts exercise appellate review over final BRB orders under the DBA. The LHWCA's 1972 amendments vested the circuit courts with jurisdiction to review the DOL's determinations. 33 U.S.C. § 921(c). Some circuits, however, hold that this portion of the LHWCA's 1972 amendments does not apply to the DBA, which originally vested jurisdiction with the local district courts under 42 U.S.C. § 1653(b). *See* Claire Been, *Bypassing Redundancy: Resolving the Jurisdictional Dilemma under the Defense Base Act*, 83 Wash. L. Rev. 219, 230-35 (2008).

[5] The LHWCA contains a separate and arguably narrower exclusivity clause (33 U.S.C. § 905(a)), that courts likewise have held bars plaintiffs from seeking remedies beyond those the that LHWCA

## III.  DISCUSSION

The gravamen of Defendants' motion to dismiss appears to be two-fold:  (1) that Plaintiffs are precluded from filing an original action in this Court for an alleged violation of the DBA/LHWCA's retaliation provision, and must instead exhaust their administrative remedies before the DOL; and (2) that, because the DBA/LHWCA administrative process is the "exclusive" remedy for injuries involving workers' compensation claims of this nature, all of Plaintiffs' claims, including their common law claims, are preempted and must be dismissed.

At the outset, with respect to Defendants' first contention, the Court notes a lack of clarity in the briefing regarding whether Plaintiffs are actually bringing a claim for retaliatory termination in violation of the DBA.  Count I of Plaintiffs' amended complaint is entitled "Discriminatory and Retaliatory Discharge, 33 U.S.C. § 948a" and, thereby, clearly signals Plaintiffs' intent to bring a claim of retaliatory termination *under* the DBA/LHWCA.  (This makes sense because, as noted above, section 948a of the DBA prohibits discrimination against employees who file or assist with a DBA claim.)  However, after Defendants argued in their motion to dismiss that the DBA/LHWCA "provide the *exclusive* remedies for Plaintiffs' alleged injuries, and those remedies must be exhausted on an administrative level and not in an original action instituted before this Court" (Defs.' Mem. at 13), Plaintiffs responded in a manner that suggests an intention to back away from asserting any DBA retaliation claim.  (*See* Pls.' Mem. in Support of Opp'n to Defs.' Mot. to Dismiss Compl.  ("Pls.' Opp'n"), ECF. No.

---

provides.  *See, e.g.*, *Hall v. C & P Tele. Co.*, 809 F.2d 924, 926 (D.C. Cir. 1987); *Barnard v. Xapata Haynie Corp.*, 975 F.2d 919, 921 (1st Cir. 1992); *Atkinson v. Gates, McDonald & Co.*, 838 F.2d 808, 812 (5th Cir. 1988).

11-1, at 17 ("Plaintiffs make no claims in this case for an injury under the DBA/LHWCA.").)

Adding to the confusion about what is being claimed and argued in this case is the fact that Defendants do not employ "exhaustion" or "preemption" analyses explicitly in their memorandum in support of dismissal, and they repeatedly conflate their exhaustion-related and preemption-like arguments to suggest (mistakenly) that Plaintiffs' common law claims are precluded *precisely because* Plaintiffs have asserted a statutory DBA retaliation claim and have failed to exhaust their administrative remedies in regard to that claim. (*See* Defs.' Mem. at 15 ("Given that the First-Amended Complaint is brought under the DBA/LHWCA, Plaintiffs are limited to exclusive remedies available to them under the statutes."); *id.* at 18 ("Plaintiffs may not forego the administrative remedies available to them under the DBA/LHWCA in favor of obtaining recovery against Defendants on the claims asserted in the First-Amended Complaint.").) These arguments sound primarily as exhaustion arguments generally do, but insofar as Defendants' chorus of dismissal contentions also assails Plaintiffs' common law claims, these assertions have an added (though not expressly stated) tone; namely, that the DBA/LHWCA framework preempts any claim for tort or breach of contract arising out of circumstances in which the DBA would otherwise apply. (*See id.* at 13 ("Plaintiffs are subject to the prescriptions of the DBA and the exclusive remedies it provides."); *id.* at 17 ("[T]he DBA/LHWCA, like most workers' compensation regimes, provide the exclusive remedies and forum for employees alleging claims arising from injuries sustained while working under a government contract performed outside of the United States." (citation omitted))).

To rule on Defendants' motion to dismiss, this Court must first get to the bottom of the claims at issue. And although the Court is required to construe the amended complaint in the light most favorable to the Plaintiffs at this stage of the litigation, it cannot fashion new and different claims, nor can it deem conceded an opposition to a stated count absent a clear indication that Plaintiffs have abandoned the questioned claim. Accordingly, this Court will presume that Plaintiffs intend to press a claim under § 948a, as the amended complaint clearly states, and will also entertain the opposite assumption—*i.e.,* that Plaintiffs do *not* wish to trigger the DBA/LHWCA's administrative scheme and thus have attempted to craft a series of common law claims that fall outside of the statute's parameters. This dual inquiry involves consideration of (1) whether Plaintiffs are entitled to bring a § 948a claim in federal court without first following the prescribed administrative procedures, and (2) whether Plaintiffs are permitted to bring common law retaliation claims arising out of facts and circumstances that the DBA/LHWCA scheme arguably covers. The Court concludes on both accounts that Plaintiffs cannot do so, and thus, that Plaintiffs' amended complaint must be dismissed.

### A.  Plaintiffs Were Required To Exhaust Administrative Remedies Before Bringing A DBA Retaliation Claim In Federal Court

The first question at issue is whether Plaintiffs may bring an original cause of action under 33 U.S.C. § 948a in district court without exhausting the LHWCA's administrative procedure as incorporated into the DBA. (Defs.' Mem. at 16.) By styling their Count I claim as one for retaliatory termination in violation of § 948a, the Court understands Plaintiffs—who have not alleged exhaustion and indisputably have failed to follow the administrative procedures that the DBA/LHWCA prescribes—to

13

argue that they are authorized to bring an original action under 33 U.S.C. § 948a in federal district court. But neither the DBA's language nor the federal jurisprudence interpreting the DBA/LHWCA supports Plaintiffs' position.

The well-established doctrine of exhaustion of administrative remedies provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938). This doctrine prevents courts from prematurely interrupting the administrative process and allows agencies to exercise autonomously their expertise and discretion. *See McKart v. United States*, 395 U.S. 185, 193 (1969); *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 105 (D.C. Cir. 1986). Requiring exhaustion also promotes judicial efficiency by ensuring that judicial review "is of a fully developed factual record, and undertaken with the benefit of the agency's exercise of discretion or application of expertise." *Weinberger*, 795 F.2d at 105 (citations omitted). Moreover, the decision an agency reaches during the administrative process "may obviate the need for a judicial decision on the issue." *Id.* (citations omitted); *see also Hawkins v. Hall*, 537 A.2d 571, 573 (D.C. 1988) ("[T]he administrative process may afford complete relief and [] eliminate the need for any judicial involvement[.]" (citations omitted)).

There is no doubt that the DOL has established a comprehensive administrative procedure for DBA/LHWCA discrimination and retaliation claims that enables the agency to exercise its expertise and discretion in resolving those claims, while also allowing for eventual federal court review. *See* 20 C.F.R. §§ 702.271-702.274; 33 U.S.C §§ 921(c)-(d); 42 U.S.C. § 1653(b). If Plaintiffs had taken advantage of the

process that the applicable regulations afford, a DOL district director would have been required to investigate their retaliation complaints and to make a recommendation as to the appropriate disposition, including employer penalties and employee remedies. 20 C.F.R. § 702.271(a)(2) (employers who violate § 948a liable for penalties and must restore qualified employees to their positions and pay lost wages); *id.* § 707.272(a) (district director will recommend that an employer reinstate a qualified employee "and/or make such restitution as is indicated by the circumstances of the case, including compensation for any wage loss suffered as the result of the discharge or discrimination"). And the regulations provide for several layers of review: if the parties do not agree with the district director's recommendation, they are entitled to a formal hearing before an ALJ, and the losing party can appeal the ALJ's decision to the BRB, *id.* § 702.273, before proceeding to file a complaint seeking adjudication of the merits of the retaliation claim in federal court. *See* 33 U.S.C. § 921(c); 42 U.S.C. § 1653(b). This Court sees no reason to allow Plaintiffs to sidestep this process, particularly where the regulations broadly empower the DOL to require reinstatement and back pay and to "make such restitution as is indicated by the circumstances of the case," (§707.272(a)), which is in large part what Plaintiffs seek in this action.

Plaintiffs have not cited, nor is this Court aware of, any federal court decisions that entertain an original cause of action under the § 948a in district court without exhaustion of these DOL administrative remedies. Indeed, relatively few federal courts have considered whether a plaintiff can file a stand-alone action under the DBA and § 948a because federal courts generally exercise only *appellate* review of final DOL workers' compensation decisions. *See* 33 U.S.C. §§ 921(c)-(d) (vesting federal courts

with jurisdiction to review BRB orders and to enforce final compensation orders); 42 U.S.C. § 1653(b) (vesting federal district courts with jurisdiction to enforce DBA compensation orders); *see also, e.g.*, *Robinson v. Newport News Shipbuilding & Dry Dock Co.*, No. 96-2603, 1998 U.S. App. LEXIS 7701 (4th Cir. Apr. 20, 1998) (review of BRB order); *Blanchette v. Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 998 F.2d 109 (2d Cir. 1993) (same); *Gen. Dynamics Corp. v. Horrigan*, 848 F.2d 321 (1st Cir. 1988) (same). Insofar as federal courts have considered this question, they consistently have dismissed claims brought under § 948a where the plaintiff has not exhausted DOL administrative remedies. *See, e.g., Brink*, 910 F. Supp. 2d at 256 ("Plaintiffs may not pursue their claims for retaliation and discrimination in the federal courts without first exhausting their administrative remedies through the exclusive process provided in the LHWCA." (citations omitted)); *see also Slightom v. Nat'l Maint. & Repair, Inc.*, 747 F. Supp. 2d 1032, 1038 (S.D. Ill. 2010) (finding that the LHWCA "provides a unique and necessary means of addressing retaliation claims related thereto," and dismissing plaintiff's retaliation claim for failure to exhaust those remedies).

Plaintiffs in the instant case have admittedly not exhausted administrative remedies, and instead go to great lengths to argue why they need not utilize the DOL process. (*See* Pls.' Opp'n at 21-24.) Their primary argument in this regard—that the § 948a remedy is "nominal" and "inadequate" (*id.* at 21)—is nonsensical given that Plaintiffs themselves have brought a claim in federal court that alleges a violation of § 948a and seeks remedies thereunder. (Comp. ¶¶ 20-23.) Moreover, the "inadequate remedy" cases upon which Plaintiffs rely (*see id.* at 21-23) generally relate to the

continued viability of state or common law compensation claims other than the federal statute, and there is no indication that the parties in those cases litigated exhaustion of remedies for a retaliation claim brought in federal court under § 948a.

Consequently, to the extent Plaintiffs here have asserted a retaliation claim under § 948a (as Count I of the amended complaint appears to do), the Court finds that this claim must be dismissed for failure to exhaust administrative remedies.

### B. The DBA/LHWCA Preempts State Common Law Claims Arising Out Of Workers' Compensation Injuries

The second question at issue is whether the DBA/LHWCA preempts Plaintiffs' state common law claims for breach of contract and the covenant of good faith and fair dealing (Count II), retaliatory discharge under common law (Count III), and conspiracy and prima facie tort (Count IV). Under the U.S. Constitution, the laws of the federal government are "the supreme Law of the Land[,]" U.S. Const. art. VI, and this supremacy principle "is implemented through the doctrine of federal preemption, under which state and local law may be stripped of its effect." *United Distribution Cos. v. FERC*, 88 F.3d 1105, 1155 (D.C. Cir. 1996) (internal quotation marks and footnote omitted). Courts have recognized three different types of preemption: express preemption (*i.e.*, Congress states in express terms that state law is preempted); field preemption (*i.e.*, Congress authorizes a scheme of regulation so pervasive that intent to preempt can be inferred); and conflict preemption (*i.e.*, compliance with both federal and state laws is either impossible or would undermine the Congressional purposes and objectives behind the federal law). *See, e.g.*, *United Distribution Cos.*, 88 F.3d at 1155 (citing *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203-04 (1983)); *Himmelstein v. Comcast of the Dist., L.L.C.*, 931 F. Supp. 2d

48, 56 (D.D.C. 2013).  As explained below, the state common law claims in the instant

case are preempted under each of these three doctrines.

> 1.  The Doctrine Of Express Preemption Bars Plaintiffs' State
>      Common Law Claims

When a statute contains an express exclusivity clause, a court's focus is on the

clause's "plain wording" because that "necessarily contains the best evidence of

Congress' preemptive intent."  *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664

(1993).  As noted above, the DBA's exclusivity clause is broadly worded:

> The liability of an employer, contractor (or any subcontractor or
> subordinate subcontractor with respect to the contract of such contractor)
> under this chapter **shall be exclusive and in place of all other liability of
> such employer, contractor, subcontractor, or subordinate contractor
> to his employees (and their dependents) coming within the purview of
> this chapter,** under the workmen's compensation law of any State,
> Territory, or other jurisdiction, irrespective of the place where the
> contract of hire of any such employee may have been made or entered
> into.

42 U.S.C. § 1651(c).  Courts evaluating this language have found that it clearly

expresses Congress's intent that the DBA preempt any and all claims that fall within the

ambit of that statute.  *See, e.g.*, *Fisher v. Halliburton*, 667 F.3d 602 (5th Cir. 2012)

("[T]he coverage provisions of the Defense Base Act clearly evidence the intent that the

act shall afford the sole remedy for injuries or death suffered by employees in the

course of employments which fall within its scope." (citation omitted)); *Brink*, 910 F.

Supp. 2d at 249-51 (concluding that the DBA's exclusivity language bars state law

causes of action related to claims for DBA benefits); *Nauert v. Ace Props. & Cas. Ins.

Co.*, No. 104CV02547, 2005 WL 2085544, at *3 (D. Colo. Aug. 27, 2005) (holding that

the "plain language of the DBA" preempts state law claims arising from alleged bad

faith handling of LHWCA claims); *Martin*, 808 F. Supp. 2d at 989 (finding that the

language of the DBA's exclusivity provision preempts common law claims that fall

within the statute's scope). Because Plaintiffs' common law claims, which allege

retaliation for Elliot's filing of a workers' compensation claim, fall squarely within the

scope of § 948a of the DBA, this Court likewise concludes these claims are plainly

preempted under the statute's express exclusivity provision. *See Brink*, 910 F. Supp. 2d

at 250 ("[C]ourts have found that the exclusive remedies and adjudication processes in

the LHWCA preempt claims of retaliation or discrimination in connection with a claim

for benefits." (citing *LeSassier v. Chevron USA, Inc.*, 776 F.2d 506, 509-10 (5th Cir.

1985), *Ravencraft v. Sundowner Offshore Servs., Inc.*, No. 97-3572, 1998 WL 246699,

at *2 (E.D. La. May 14, 1998))).

In arguing to the contrary, Plaintiffs attempt to construe the DBA's exclusivity

clause narrowly, homing in on the "under this chapter" language and contending that

"the DBA only provides liability for compensation for *injuries*, and has no other

provisions directed at discrimination for loss of [a] job." (Pls.' Opp'n at 18. (emphasis

added)). Even setting aside the fact that Plaintiffs make precisely the opposite assertion

in Count I of the amended complaint, (*see* Compl. ¶ 21 ("Under the DBA, which

incorporates the LHWCA, it is unlawful to retaliate against any employee for claiming

an injury on the job under these laws, or for assisting such an individual in making or

reporting of such a claim.")), the argument that the DBA contains no retaliation

provision finds no support in the text of the governing statutes.

As explained above, the DBA incorporates the LHWCA, *see* 42 U.S.C.

§ 1651(a), including the LHWCA's language prohibiting retaliation against employees

who claim benefits and those who testify on a claimant's behalf, *see* 33 U.S.C. § 948a;

*see also Brink*, 910 F. Supp. 2d at 250 (collecting cases). There is no doubt that the anti-retaliation provision of the LHWCA applies to employers who hire civilians and post them at foreign military installations, *see Brink*, 910 F. Supp. 2d at 245-47, and it is also well-established that the DOL has the power to impose penalties on employers who violate this provision, as well as the power to award employees back pay and to reinstate employees to their former positions. 33 U.S.C. § 948a. Plaintiffs point to *Martin v. Travelers Insurance Co.*, 497 F.2d 329, 330 (1st Cir. 1974), which allowed a plaintiff to proceed with a state law tort claim where an insurer stopped payment on a DBA benefits check, in support of their argument that retaliation claims somehow fall outside of the DBA and its exclusivity provision. (Pls.' Opp'n at 25-26.) But the D.C. Circuit subsequently contradicted the First Circuit's *Martin* opinion when it held that the LHWCA preempts *all* claims relating to a failure to pay LHWCA benefits. *See Hall*, 809 F.2d at 9264. In a similar vein, this Court is not persuaded by the decisions of other courts allowing employees to pursue myriad state law claims based on the conclusion that certain intentional torts fall outside the scope of the DBA (Pls. Opp'n at 25-29), because, here, the injury that Plaintiffs claim—retaliation—is directly and unequivocally addressed in the DBA/LHWCA.

Finally, the Court notes that state court cases such as *Hebert v. Mid South Controls & Servs.*, 688 So. 2d 1171 (La. Ct. App. 1996), and *Moss v. Dixie Machine, Welding & Metal Works*, 617 So.2d 959 (La. Ct. App. 1993), which Plaintiffs also proffer (*see* Pls.' Opp'n at 22-23, 26-28), are either unpersuasive, or inapposite, or both. The court in *Hebert* recognized that its decision rejecting defendant's preemption argument and allowing a state law retaliatory discharge claim to proceed was in

"complete conflict" with all federal authority on the question. 688 So. 2d at 1175. And the court in *Moss* rested its conclusion that "the wrongful discharge remedy provided under the LHWCA, § 948a, does not preempt a similar state law remedy[,]" 617 So. 2d at 961, on decisions pertaining to the "twilight zone" of LHWCA coverage—"a specie of maritime law in which overlapping jurisdictional spheres create concurrent jurisdiction between the LHWCA and state laws." *Wallace v. Ryan-Walsh Stevedoring Co., Inc.*, 708 F. Supp. 144, 153 (E.D. Tex. 1989). For reasons that relate to the separate and varied histories of the LHWCA and the DBA, no such concurrent jurisdiction exists under the DBA.[6]

   2.    The Doctrine of Field Preemption Bars Plaintiffs' Common Law Claims

Not only is there a clear express preemption clause at work in the instant case, but the doctrine of field preemption also establishes that Plaintiffs' common law retaliation claims are barred. Under field preemption principles, even "[a]bsent explicit preemptive language, Congress'[s] intent to supersede state law altogether may be inferred because '[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it[.]" *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152 (1982) (alteration in original) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). That reasonable inference arises here. According to the D.C. Circuit, the LHWCA and state

---

[6] Because the LHWCA "supplements, rather than supplants, state compensation law" in certain areas, workers may pursue either federal or state remedies where the injury occurs in a "maritime but local" zone, such as a terminal or dry dock. *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 720 (1980). By contrast, Congress enacted the DBA to create an exclusive workers' compensation remedy for overseas workers, who are in circumstances in which no state remedy exists. *Flying Tiger Lines, Inc. v. Landy*, 370 F.2d 46, 52 (1966) ("[T]he coverage provisions of the Defense Base Act clearly evidence the intent that the act shall afford the sole remedy for injuries or death suffered by employees in the course of employments which fall within its scope.").

workers' compensation laws modeled after that statute, "provide[] a *comprehensive* scheme for compensating employees who are injured or killed in the course of employment." *Hall*, 809 F.2d at 926 (emphasis in original) (citations omitted).[7] And as the Court has already found, this comprehensive scheme even encompasses claims of retaliation for having sought workers compensation benefits, allegations that the DOL resolves under a detailed administrative process. Indeed, "'it is difficult to imagine a more comprehensive scheme of federal regulation—one that leaves no room for state involvement—than the LHWCA.'" *Nadheer v. The Ins. Co. of Penn.*, 506 F. App'x. 297, 301 (5th Cir. 2013) (quoting *Tex. Emp'rs' Ins. Ass'n v. Jackson*, 820 F.2d 1406, 1412 (5th Cir. 1987), *vacated and rev'd on other grounds*, 862 F.2d 491, 494 (5th Cir. 1988) (en banc)). The sheer breadth of the DBA/LHWCA strongly supports an inference that Congress intended to prohibit employees from bringing state law claims to recover for injuries that fall within the DBA's parameters, such as the claims at issue here.

  3. The Doctrine of Conflict Preemption Bars Plaintiffs' Common Law Claims

  Finally, dismissal of Plaintiffs' common law claims is also warranted under the doctrine of conflict preemption. When a state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" that state law is preempted under the doctrine of conflict preemption. *Arizona v. U.S.*, 132 S. Ct. 2492, 2501 (2012) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1940)). In evaluating conflict preemption, "it is not necessary that compliance with both state and

---

[7] In *Hall v. C & P Telephone Co.*, 809 F.2d 924, 925 (D.C. Cir. 1987), the D.C. Circuit interpreted the District of Columbia Compensation Act, D.C. Code §§ 32-1501-32-1545, a 1928 statute that Congress patterned after the LHWCA.

federal law be impossible[,]" *Atkinson*, 838 F.2d at 812 (citation omitted); rather, the concern is whether allowing a state law cause of action would subvert the purposes of the federal statutory scheme. *See Arizona*, 132 S. Ct. at 2501.

The D.C. Circuit has long held that Congress's purpose in enacting the LHWCA and, by implication the DBA, was to provide employers with "general immunity" from employee tort suits for injuries covered by the workers' compensation scheme and to provide employees with a specific remedy for claims within its scope. *Hall*, 809 F.2d at 926; *see also id.* ("In return for the guarantee of a practical and expeditious statutory remedy, employees relinquish their common-law tort remedies against employers for work-related injuries." (citations omitted)). Permitting Plaintiffs to maintain their state law claims would undermine this policy "by affording a choice of remedies which was not intended." *Flying Tiger Lines*, 370 F.2d at 52; *see also Hall*, 809 F.2d at 926 (allowing state law claims would "undo[] 'the legislated compromise between the interests of employees and the concerns of employers.'" (quoting *WMATA v. Johnson*, 467 U.S. 925, 931 (1984))); *Brink*, 910 F. Supp. 2d at 250 (same); *Atkinson*, 838 F.2d at 812 ("Surely when the LHWCA provides that there shall be a [certain penalty], it likewise inferentially, but nonetheless plainly, also provides that the penalty shall not be any different amount[.]" (emphasis omitted)); *Nadheer*, 506 F. App'x. at 301 ("Allowing plaintiffs to recover separately for breach of contractual provisions invoking the LHWCA would subvert the very purpose of the LHWCA.").

Moreover, in the instant case, there is also a risk of conflicting judgments regarding Plaintiff Elliot's underlying injury if Plaintiffs are permitted to proceed with their common law retaliation claims. Defendants have consistently maintained that

Torres AES did not, in fact, terminate Sickle and Elliot for submission of a valid workers' compensation claim, but instead terminated them because Elliott's DBA claim was fraudulent.  (Defs.' Mem. at 21, 25, & 26 n.5.)  However, when Elliot presented his claim for workers compensation to the DOL, the agency approved and paid it.  (Am. Compl. ¶ 13.)  Therefore, if Plaintiffs' common law retaliation claims proceed, Defendants would likely assert the defense of fraud, and this Court would be required to reassess the validity of Elliot's initial workers' compensation claim as part Plaintiffs' action.  The risk of a conflict between, on the one hand, the agency's authorized claims process, and on the other, this Court's evaluation of the claimed injury, is apparent.[8]

The bottom line is that, as federal courts across the country have found, the DBA expressly and impliedly preempts other remedies state law affords to similarly-situated plaintiffs.  *See, e.g.*, *Fisher*, 667 F.3d at 610; *Flying Tiger Lines*, 370 F.2d at 52; *Vance v. CHF Int'l*, 914 F. Supp. 2d 669, 681 (D. Md. 2012); *Jones v. Halliburton Co.*, 791 F. Supp. 2d 567, 580 (S.D. Tex. 2011).  Those courts that have allowed an employee to proceed with common law claims have done so only after finding that the particular injury is outside the DBA/LHWCA's scope, and thus the DBA/LHWCA provides *no* remedy.  *See, e.g.*, *Jones*, 791 F. Supp. 2d 587 (DBA's exclusive remedies did not preclude civil litigation arising from a contractor's sexual assault in her barracks in Iraq because her injuries were unrelated to her employment and therefore were "not injuries within the scope of the DBA."); *Martin v. Halliburton*, 808 F. Supp. 2d 983, 992-93 (S.D. Tex. 2011) (holding that DBA preempted claims arising out of employee's death,

---

[8]  The potential for this type of conflict—which can be addressed through the doctrine of primary jurisdiction, *see MCI Commc'n s Corp. v. AT&T Co.*, 496 F.2d 214, 220 (3d Cir. 1974) (a court may refer a matter to an administrative agency for resolution where there is a risk of "contradictory rulings by the agency and the court")—illustrates both the need for exhaustion of administrative remedies and the correctness of the conclusion that conflict preemption bars Plaintiffs' common law claims.

but permitting daughter's intentional infliction of emotional distress claim where the claim arose from the injury to *her* based on defendants' misrepresentations regarding the circumstances of her father's death). The Court reads Sickle's belated assertion that § 948a does not cover his particular retaliation claim (Pls.' Opp'n at 23-24) as an attempt to craft this kind of outside-the-scope argument, but Sickle's characterization flatly contradicts both the fact that he seeks to recover under § 948a in Count I of the complaint, and the text of the statute, which should be construed broadly to cover those who assist others in making a workers' compensation claim. *Cf. Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597-98 (1944) (holding that a remedial statute "must not be interpreted or applied in a narrow, grudging manner"); *Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35, 43 (1st Cir. 1999) (refusing to narrowly construe the retaliation provision of FLSA to apply only to formal complaints).[9] As the Court explained above, the particular injury that plaintiffs allege in each of Counts II-IV arises from their allegedly retaliatory discharge, which falls squarely within the scope of the DBA.

### C.  Other Grounds Asserted For Dismissal.

Defendants have argued that the Court has no personal jurisdiction over Scott Torres (Defs.' Mem. at 8-13) and that the facts alleged in the amended complaint fail to state a claim under § 948a or state common law (*id.* at 19-32). In light of this Court's

---

[9] Section 948a makes it unlawful to "discharge or in any other manner discriminate against an employee as to his employment . . . because he has testified or is about to testify in a proceeding under this chapter." 33 U.S.C. § 948a. In the absence of any authority from the DOL, this Court declines to limit the reach of this provision to actual testimony, as Sickle suggests. Rather, it will construe this language to extend to any employee who is terminated because he or she assists an injured employee with his or her workers' compensation claim. This is consistent with the comprehensive nature of the DBA/LHWCA workers' compensation scheme at issue and also with the liberal construction given other, similar remedial statutes. *See, e.g.*, *Valerio v. Putnam Assocs., Inc.*, 173 F.3d at 43 (construing the FLSA).

ruling that (1) Plaintiffs cannot assert any claim under § 948a because they have failed to exhaust administrative remedies, and (2) the DBA preempts Plaintiffs' common law claims, the entire complaint must be dismissed, and the Court need not reach these issues.

## IV.    Conclusion

For the forgoing reasons, this Court concludes that Plaintiffs have failed to exhaust administrative remedies with respect to their § 948a claim and that the DBA preempts their related state common law claims for breach of contract, breach of the covenant of good faith and fair dealing, retaliatory termination in violation of public policy, and conspiracy and prima facie tort.  The Court therefore **GRANTS** Defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted and **DISMISSES** the amended complaint.  A separate order accompanies this Memorandum Opinion.

DATE:  December 24, 2013             *Ketanji Brown Jackson*
                                     KETANJI BROWN JACKSON
                                     United States District Judge